[Crim. No. 4066. Second Dist., Div. One. Mar. 20, 1947.]

THE PEOPLE, Respondent, v. CLARENCE VOLLIS SPENCER et al., Defendants; WILLIE LEE DANDRIDGE, Appellant.

Francis C. Jones for Appellant.

Robert W. Kenny, Attorney General, and Ruth Bernfeld, Deputy Attorney General, for Respondent.

WHITE, J.—In an information filed by the District Attorney of Los Angeles County, appellant herein, Willie Lee Dandridge, together with Clarence Vollis Spencer and Walter Latimore, were charged in two counts with the crime of robbery allegedly committed on February 28 and March 4, 1946, respectively, in the county of Los Angeles.

Appellant entered pleas of not guilty to each count charged in the information. Trial before the court, sitting without a jury, resulted in the conviction of appellant on both counts, which the court found to be robbery of the first degree. A motion for a new trial was denied. From the judgment and the order denying his motion for a new trial, appellant prosecutes this appeal.

In view of the single question presented on this appeal, it becomes unnecessary to narrate in detail the factual background which gave rise to this prosecution. It will suffice to

say that on March 8, 1946, about 2:30 o'clock in the morning, appellant was placed under arrest, in connection with the foregoing crimes, by Officer James P. Brady of the Los Angeles Police Department. The only evidence presented at the trial of this appellant to connect him with the commission of the offenses charged against him was that given by Officer Brady, who testified that on the day he arrested appellant he had a conversation with him wherein he inquired of appellant as to whether he "was involved in this robbery, or either of these robberies" to which appellant replied that he was not. On the next succeeding two days Officer Brady informed appellant that his codefendants Spencer and Latimore were involved in the aforesaid crimes and in response to further questioning as to his being involved in the commission of the offenses appellant insisted, "I don't know anything about it." On the morning of March 11, Officers Brady and Murphy assembled all defendants in a room at central police station. Thereupon, Officer Murphy advised the four men "that all conversation that we would have when all four were present, that we could use against all four of them." Officer Murphy then said, "I want you Spencer (one of the defendants), to tell us what happened." Defendant Spencer thereupon, in detail, described the manner in which both robberies were committed. In the course of his narrative, defendant Spencer stated that on the day prior to the commission of one of the robberies—a jewelry store—appellant herein went into the store "to look over the place" on the pretext of making inquiry "pertaining to getting a link fixed on his wrist watch." Defendant Spencer further stated that on the occasion of both robberies their automobile was parked a short distance from the scene of the crimes and that appellant Dandridge remained in the "getaway" vehicle until the two men who actually perpetrated the robberies returned with the loot, whereupon they drove away and later divided the spoils among themselves.

At the conclusion of defendant Spencer's statement, according to the testimony of Officer Brady, "Officer Murphy asked Latimore and the rest if they were in on the job. Walter (defendant Latimore) said that he was, that everything Spencer said was right; and Dandridge (appellant herein) did not say anything. . . ." When Officer Brady was asked, "Now, at the time of this conversation when the four defendants were present, did you ask at that time the defendant Dandridge

(appellant herein) specifically again if he was involved in the crime?" the witness answered, "Specifically, no."

At the trial, a timely motion was made on behalf of appellant "to strike from the record any of the statements involving him in this affair." In denying the motion, the trial judge said, "At one conversation when the accusatory statement was made, the officer testified that the defendant Dandridge remained silent. He had an opportunity to deny it. . . . But the officer testified on one occasion Dandridge remained silent."

Appellant urges a reversal on the ground that the court committed prejudicial error in admitting into evidence as binding on him the foregoing testimony of Officer Brady concerning the confession made by defendant Spencer in the presence of appellant, contending that as to appellant it was hearsay.

In the case of *People* v. *Simmons,* 28 Cal.2d 699, 712 [172 P.2d 18], the Supreme Court held that accusatory statements of the character here involved are plain hearsay, and may properly be admitted only as admissions, under the well-known exception to the hearsay rule. That if such statements are denied then there is no admission and the statements cannot properly find their way into the record. If the accused admits the truth of such statements then, of course, they may be admitted into evidence. But when, as in the instant case, an accused stands mute in the face of the accusatory statements, it has been held "that *under certain circumstances* both the statement and the fact of the accused's failure to deny are admissible on a criminal trial as evidence of the acquiescence of the accused in the truth of the statement or as indicative of a consciousness of guilt" (*People* v. *Simmons, supra,* p. 712). This doctrine is founded on human experience, which dictates that the usual propensities and passions of people falsely accused provoke a prompt denial. ▮ But the test for admitting such a statement into evidence is not, as announced by the trial court, that the accused "had an opportunity to deny it," but "whether the accusation has been made under circumstances calling for a reply. . . ." (*People* v. *Simmons, supra,* p. 712.) When the trial court determines, under the circumstances surrounding the making of the statement, that the silence of an accused gives rise to an inference of acquiescence or guilty consciousness, the statement may be admitted, not as substantive evidence in proof of the fact as-

serted, but merely as a basis for showing the reaction of the accused to it.

Biblical history of Pontius Pilate's condemnation of Jesus, as well as human experience, has taught us that silence or an equivocal reply in the face of an accusatory statement is not always indicative of a consciousness of guilt (*People* v. *Simmons, supra,* p. 713).

Whatever may be the rule in other jurisdictions, it is now firmly established in California that the admissibility of evidence of the character with which we are here concerned depends upon whether the occasion and the circumstances were such as to afford the accused person an opportunity to act or speak, and whether the accusatory statement was one made upon such occasion and under circumstances that would naturally call for some action or reply. Each case must, therefore, be determined upon the facts and circumstances therein presented (*People* v. *Simmons, supra,* p. 715). In the case just cited at page 716, the Supreme Court expresses grave concern over what is characterized as "... *a growing tendency on the part of trial courts to indulge too broad a discretion* in allowing admission of such evidence in the first instance; a failure to fully consider the question of whether the accused replied under restraint; whether the circumstances under which the accusation was made called for a reply; whether the accused understood the statement; and *whether his conduct merely indicated a desire to avail himself of the rule against self-incrimination or whether it could reasonably give rise to an inference of acquiescence or guilty consciousness."* (Emphasis added.)

██ The rule of admissibility followed in this state does not make the statement inadmissible simply because the accused is under arrest, but as heretofore pointed out, the determinative factor is whether the defendant was free to speak spontaneously and whether the circumstances are such that a reply is called for. Other forms of restraint recognized in the case of *People* v. *Simmons, supra,* at page 715, are a belief on the part of the accused that his best interests will be served by silence, advice of counsel, and admonition as to silence. In the case just cited, it is said, at page 719, "No violation of the privilege against self-incrimination can be sanctioned."

In the light of the foregoing rules, let us now analyze the circumstances surrounding the making of the challenged statement to determine whether the occasion and the circum-

stances were such as to naturally call for some action or reply upon the part of the appellant.

In the first place, the record reflects that for two or three days following his arrest, appellant, when informed by the police officers that his codefendants were involved in the robberies and when asked whether he too was involved therein, consistently denied any involvement in the crimes.

When the codefendant Spencer was brought before appellant and the other defendants, according to the testimony of Officer Brady, "Officer Murphy told the defendants that all conversation that we would have when all four were present, that we could use against all four of them." And he said, "I want you, Spencer, to tell us what happened." Thus we see that on the occasion in question the police officer advised defendants, including appellant, that any and all conversation had in their presence could be used against all four defendants. Under such circumstances can it reasonably be said that a disclaimer of guilt was naturally called for? As was said by the Supreme Court in the case of *People* v. *Simmons, supra,* p. 716, "Of what avail is it to warn a defendant that he need not reply to police questioning unless he wishes to, and that anything he may say may be used against him, if, in the event he is unresponsive under this admonition, his silence or equivocal reply is later turned against him as indicative of a consciousness of guilt?" To us it is also obvious that in view of the admonition of the police that anything he might say would be used against him, appellant was, as he had a right to do, simply exercising his constitutional privilege against self-incrimination. Furthermore, no specific request for an answer was made directly to appellant.

In the case of *People* v. *Simmons, supra,* at pages 716 and 717, the court, referring to the police practice of reading detailed statements of the crime purportedly made by a codefendant or companion in the crime with a view toward eliciting either a complete confession or an admission by silence, to be used against the defendant to whom the statement is read, characterizes this procedure as ". . . another growing practice in the use of the accusatory statement which is erroneous and must be unqualifiedly condemned." Among the objections cited by the Supreme Court to this form of evidence is "that there is placed before the jury under the guise of an accusatory statement a vast amount of hearsay testimony otherwise utterly inadmissible." The same objection can be urged to the practice

indulged in the instant case where, instead of confronting the appellant with a written statement made by the codefendant, the latter was brought into the presence of the appellant, and because, under the circumstances present herein, appellant did not respond with a flat denial, the statement of the codefendant was put in evidence in its entirety. █ If we assume that the trial judge, who in this instance was the trier of facts, did not receive it as substantive evidence in proof of the facts asserted, but merely as a basis of showing the reaction of the accused to it, it must be held in view of the particular circumstances attending and preceding the making of the statement in the case at bar, that it was an abuse of discretion on the part of the trial court to admit the evidence in the first instance. The circumstances hereinbefore narrated were such as to foreclose it. And the exercise by appellant, under the circumstances of this case, of his constitutional privilege against self-incrimination is an added reason for holding that his silence was not such as to give rise to an inference of acquiescence in the truth of the statements or of guilty conscience. Consequently, the admission of the statement into evidence must be held to be prejudicial error requiring a reversal.

Fundamental rules such as the one with which we are here concerned were not adopted to secure immunity for the guilty but for the protection of the innocent. Whether guilty or innocent, appellant was entitled to have his case fairly tried according to the established rules of law, for as was said in *Hurd* v. *People,* 25 Mich. 405, ''Though unfair means may happen to result in doing justice to the prisoner in the particular case, yet justice so attained is unjust and dangerous to the whole community.'' The doctrine that respect for the law cannot be inspired by withholding the protection of the law is one which recognizes no exceptions. It is by silent approaches and slight deviations from established legal modes of procedure that illegitimate and unconstitutional practices get their first footing. We are counseled by Mr. Justice Sutherland of the Supreme Court of the United States in a strong dissenting opinion delivered in the case of *Associated Press* v. *National Labor Relations Board,* 301 U.S. 103 [57 S.Ct. 650, 81 L.Ed. 953]) to ''withstand all beginnings of encroachment. For the saddest epitaph which can be carved in memory of a vanished liberty is that it was lost because its possessors failed to stretch forth a saving hand while yet there

was time.'' The acquittal of a guilty person is truly a miscarriage of justice, but the conviction of an innocent person through relaxation of those fundamental legal principles such as the one with which we are here concerned, would be a tragedy.

The judgment and the order denying a new trial are and each is reversed, and the cause remanded.

York, P. J., and Doran, J., concurred.