[Crim. No. 2707.   Third Dist.   June 6, 1957.]

THE PEOPLE, Respondent, v. GARRY LEE PARKS, Appellant.

Douglas C. Busath, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier and Lloyd Hinkelman, Deputy Attorneys General, for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment entered upon a jury verdict which found appellant guilty of three armed robberies, and from the order denying a new trial.

It is unnecessary to narrate the evidence, as appellant does not challenge the sufficiency thereof to support the verdict. However, he was positively identified by the victims of the robberies.

■ It appears from the record that upon appellant's arrest he was questioned by four officers, and at that time he denied his guilt. On the following day, he was further interrogated and again insisted that he was innocent. He was held in custody and four days later was taken to the office of a deputy district attorney. Appellant there declined to answer any questions addressed to him, stating that he did not want to talk "about anything" until he "talked to an attorney." This was brought out by the deputy district attorney on cross-examination of appellant and furnishes the basis for one of two assignments of error on appeal. The other assignment is based on alleged prejudicial misconduct of the trial judge in respect to the same matter.

Without objection, the deputy district attorney asked appellant if at the time of the aforementioned interview he had not asked him various questions as to his whereabouts at the times of the robberies, as to whom he was with and as to what he had been doing and if he had not refused to answer. Appellant admitted that this was so. The deputy district attorney continued this line of questioning, asking: "Q. You made no response at all? A. Yes, sir, I did. I said I did not want to talk to you about anything until I talked to an attorney. Q. And do you remember my asking a question, 'Do you know where Grady's Bottle Shop is,' and do you remember you didn't say anything? You didn't answer that? A. I don't remember your asking that specific question."

At that point, appellant's counsel interposed an objection on the ground that the deputy district attorney was going beyond the scope of proper cross-examination. The objection was overruled, and the deputy district attorney continued. His next question was: "Q. Do you remember my asking

you this question: 'Do you know you were identified by Mr. and Mrs. Smith who own the Grady's Bottle Shop as the person who robbed the bottle shop twice?' Do you remember you made no response to that?''

Whether or not appellant had answered the question was immaterial. His failure to deny that he knew that someone had identified him was not indicative of a consciousness of guilt. But even if we were to assume that the question could be considered in the nature of an accusatory statement, which it was incumbent upon appellant to deny (*People* v. *McKay*, 107 Cal.App.2d 519, 522 [237 P.2d 345]), it was error to admit evidence of his failure to deny in the instant case for reasons hereinafter set forth. The deputy district attorney continued: ''Q. The question was: 'Do you know you were identified by Mr. and Mrs. Smith who own Grady's Bottle Shop as the person who robbed the bottle shop twice? Do you know that?' And he made no response to that question.'' Then the trial court interposed: ''If you did not do it, why didn't you say you didn't do it? MR. OLSON [counsel for appellant]: Your Honor—— THE COURT: Let the understanding be you are objecting to them all. I am still going to ask it: If you didn't rob it why didn't you say you didn't rob it? A. Because, sir, I am entitled to my constitutional rights. THE COURT: Which one are you talking about? Maybe you are talking about one I never heard of. A. Well, sir, I don't have to say anything to anything when I am under arrest until—I am entitled to counsel. THE COURT: Why didn't you say you didn't rob it? A. I don't remember him asking me that.''

The facts in the instant case bring it within the rule enunciated in *People* v. *Simmons*, 28 Cal.2d 699, 718-721 [172 P.2d 18]. Therein the Supreme Court declared that:

''. . . any accusatory statement and a response thereto made by a defendant under restraint, should be considered with great caution, and if the police questioning has been insistent, so that the defendant has been induced or persuaded against his better or more considered judgment to make a response or has adopted the policy of silence, the accusatory statement should be held inadmissible by the trial judge in the first instance. . . . No violation of the privilege against self incrimination can be sanctioned.

''    .    .    .    .    .    .    .    .    .    .    .    .

''. . . Defendant was under restraint by the police officers. He was, or should have been advised by them, but at any

rate knew from his past criminal experience, that anything that he might say would be used against him and that he did not have to make any statements. . . . it is obvious that defendant was attempting to exercise his constitutional privilege against self-incrimination, despite the insistence of the officers upon carrying on a conversation about the contents of the statements, and that his responses were not such as could give rise to an inference of acquiescence or of guilty consciousness. In this situation it was an abuse of discretion on the part of the trial court to admit the evidence in the first instance; the circumstances were such as to foreclose it.'' (Accord: *People* v. *Spencer,* 78 Cal.App.2d 652 [178 P.2d 520].)

The error in admitting the evidence was prejudicially compounded. The deputy district attorney continued the objectionable line of questioning until the trial court interrupted:

''I think I had better straighten something out. The jury might have misunderstood my questions. It is true that no person is required to testify against himself under the law of this State. No person is required to give testimony in any court or in any proceeding, or at any time against himself, but in this—what Mr. Wells is referring to is a conversation had in the District Attorney's office and at that time, according to this statement—these questions he has been asked here, he asked this defendant certain questions and you have a right to determine from his failure to reply, failure to deny it, you have the right to, in your own mind, to determine whether or not it indicates guilty knowledge or consciousness of guilt.

''Now, you have a right to take into consideration an ordinary thing that a person would do, and an innocent person, when asked, 'Do you know that you have been identified as the person who robbed Grady's Bottle Shop,' you have the right to take into consideration what the natural inclination of a person ordinarily would be. Go ahead. I think I have straightened that out, counsel. MR. WELLS: I understand, your Honor. THE COURT: I don't want this jury to think that he has got the right to refuse to answer. MR. WELLS: That is correct, your Honor. THE COURT: The fact that he doesn't answer can be taken into consideration by this jury.''

The trial court was clearly in error, and its remarks were highly prejudicial. Moreover, the error was further enhanced.

There was read into the record at length each of the questions asked by the deputy district attorney and the "no responses" thereto by appellant noted. Thereafter, the court further emphasized the matter by making the following statement just prior to commencing the formal charge to the jury:

". . . Now ladies and gentlemen, I want to clear up one thing here: You recall that on yesterday the District Attorney asked the defendant while the defendant was on the witness stand this question, —Mr. Wells asked the question: 'Do you remember'—— that is referring to a conversation that he had with the defendant in the District Attorney's office about the day of his arrest. 'Mr. Wells: Do you remember me asking you this question: "Q. Do you know you were identified by Mr. and Mrs. Smith, who own the Grady's Bottle Shop, as the person who robbed the bottle shop twice?" Do you remember you made no response to that? A. No, sir, I don't believe you asked me that.' Now then it further developed during the hearing that the record, court reporter's record of that conversation, showed that the defendant made no response to that question when asked by Mr. Wells— when it was asked by Mr. Wells in the District Attorney's office, and you recall the Court informed you that the defendant has the right to refuse to answer, had the right to refuse to answer the question and I inform you of that again. But although he had the right to refuse to answer, as to the jury I then told you and I tell you again, the jury could take into consideration, if it so desired, the fact that he did refuse to answer.

"Now then, later in the trial the defendant offered testimony to show that when he was first arrested he was brought into the Sheriff's office—rather the defendant testified to this, that when he was first arrested he was taken into the Sheriff's office and told by the Sheriff that he was accused of these two robberies,—of two robberies, two 'jobs' as he said it. Well, there he said that he at that time denied having committed the robberies. Well, now, he is not required to continually deny it. However, you may take into consideration the fact that he didn't deny it when asked about it by Mr. Wells, but you also must take into consideration the fact that he did deny it at the time he was questioned in the District Attorney's office prior to being questioned by Mr. Wells."

Apparently, the trial court was attempting to cure the errors committed during the course of cross-examination of

appellant. However, we hold that it failed to do so, and that the error was so prejudicial as to necessitate a reversal.

The judgment and the order are reversed.

Peek, J., and Schottky, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 31, 1957.