[Crim. No. 4156. First Dist., Div. One. Jan. 8, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. THOMAS EUGENE MOORE et al., Defendants and Appellants.

Thomas Eugene Moore and Charles F. Van Buskirk, in pro. per., and Thomas J. Arata, under appointment by the District Court of Appeal, for Defendants and Appellants.

Stanley Mosk, Attorney General, John S. McInerny and Keith E. Pugh, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

### Question Presented

MOLINARI, J.—The sole question presented on these appeals from judgments of conviction for the crime of burglary is whether there is sufficient corroborative evidence to sustain the convictions.

### The Record

Three witnesses testified at the trial, to wit: Lloyd L. Murray, Sesto Luzzi and Robert W. Hayes. Additionally, the testimony of Joseph Uvdic and Charles Quackenbush given at a preliminary hearing was received pursuant to stipulation.

Uvdic testified that sometime between 1:15 a. m. and 7:15 a. m. on November 25, 1961, a tavern owned by him and known as "Jess & Joe" was broken into and a safe containing over $1,500 in cash and certain items of jewelry removed therefrom; that he did not give anyone permission to enter the tavern or to remove the safe; that the cash contained in the safe included one $100 bill and one $50 bill; that he had served beer to the appellants, Van Buskirk and Moore, in his tavern on the day previous, i.e., November 24, 1961, and that Charles Quackenbush had also been there on that day. Uvdic also stated that the safe was found about two weeks later in a canyon about 6 or 7 miles from the tavern and that when he went to get it in the canyon there was nothing in it and that the door was also missing.

Quackenbush, who was jointly charged with Van Buskirk and Moore, and who pleaded guilty to the charge prior to the preliminary hearing, testified substantially as follows: that some time after 1 a. m. on November 25, 1961, he, Moore and Van Buskirk went to Uvdic's tavern in his (Quackenbush's) car; that he and Moore pried open a side door and entered the tavern; Van Buskirk remaining outside; that he and Moore took the safe outside the tavern and that all three of them

placed the safe in the car; that they then drove up Trinity Mountain Road about 2 miles when the car "wouldn't pull the hill"; that they then "dumped" the safe out of the car into a canyon and left it; that on the following day he drove Moore and Van Buskirk in his car to the location where the safe had been dropped and left them there; that he returned a half hour later at which time Moore and Van Buskirk said they "[c]ouldn't open it with the tools that they had"; that the three of them then went to a house occupied by members of his family where they got a sledge hammer and two wood wedges; that they then drove back to the site of the safe where he left Moore and Van Buskirk with the said tools and then drove off; that he returned in about a half hour; that Moore and Van Buskirk were waiting for him; that all three of them then drove off; that they told him they had opened the safe; that they had "the money with them," which they laid out, counted and divided into three equal portions while the three of them were still in his car; that he received from $150 to $200 as his share; that they returned the tools to him; that they drove to a place where Moore's car was parked; that Moore and Van Buskirk then drove off in Moore's car and he drove off in his; that he was arrested on December 4, 1961; that he was intoxicated when arrested; that he told the police officers about the burglary and about the safe; that he helped the officers search for the safe; and that later when his head cleared he told the officers that Moore and Van Buskirk had been involved with him in entering the tavern. Quackenbush also stated that he met Van Buskirk about three days before the burglary but knew Moore about four to five years; that during this three-day interval they had met, talked and drunk together on several occasions, and that on November 24th the three of them had gone to the Department of Employment together looking for a job.

Murray, the owner of a tavern known as Lloyd's Inn, testified: that he had known Moore for a number of years; that on the day previous to the burglary Moore came into his tavern with two other men, one of whom was Quackenbush; that he didn't know who the other person was and that he could not identify him as Van Buskirk; that he served the men; and that Moore borrowed $2.00 from him "to go out and secure a job...."

Luzzi testified as follows: that he resided on West Trinity Road west of Highway 12; that on the morning after Thanksgiving, in November 1961, Moore, Van Buskirk, and Quacken-

bush visited his home at 4 a. m.; that this was the same day on which he later heard rumors of the burglary at Jess & Joe's; that they were in Quackenbush's car; that they told him they were out of gas; and that he gave them two gallons of gas without charge. He also testified that either on the afternoon of the same day, or the next day, Moore returned to his home alone at which time he repaid a loan which he (Luzzi) had previously made to Moore; that Moore paid him $150 with a $100 and a $50 bill; and that Moore did not actually owe him $150, but that Moore stated he could have the difference as interest. (This latter testimony was admitted into evidence only as against Moore.)

Inspector Hayes of the Sonoma County Sheriff's Office testified concerning a conversation with Moore on December 6th, at which time Moore stated the following to him: that on the evening of November 24 he (Moore) had gone to Lloyd's Inn with Quackenbush and Van Buskirk; that he (Moore) had borrowed $2.00 from Lloyd for the purpose of buying gasoline to look for a job; that Van Buskirk left the area after the 24th or 25th of November; that the money he (Moore) had spent during the week following the 24th of November was borrowed from a Ruth Hoffman; that he had also borrowed money to pay bills amounting to $50 but couldn't state from whom he had borrowed the money; and that he (Moore) had been with Van Buskirk and Quackenbush on November 25th in Bennett Valley where they slept in automobiles (Quackenbush's and Moore's). (This testimony was admitted into evidence only as against Moore.)

Hayes also testified to a conversation with Van Buskirk regarding the burglary wherein Van Buskirk told him that he was acquainted with Moore and Quackenbush, having known the latter since November 15 and the former prior to that time. He testified further that in that conversation he said the following to Van Buskirk: "I told him at that time that we had Tom Moore and Charles Quackenbush in custody at the Sheriff's Office and that one of them had confessed to the burglary and had involved all three of them, and he said at that time—he said, 'Tell me,' he says, 'Which one copped out?' . . ." Hayes stated further that Van Buskirk then declined to discuss the matter further without an attorney. (This testimony was admitted into evidence over objection, but was admitted only as against Van Buskirk.) Hayes also testified that this conversation with Van Buskirk took place on December 12, 1961, after the latter's return from San

Diego where he had been arrested; that shortly after Quackenbush's arrest on December 4th he attempted to locate Van Buskirk in the Sonoma Valley area but was unable to locate him; that the safe was found 70 feet off the side of Trinity Road about one half to three quarters of a mile up said road east of Highway 12; that Trinity Road crosses Highway 12; that Luzzi resided on West Trinity Road, a continuation of Trinity Road west of Highway 12; and that Luzzi's residence was located about a quarter of a mile west of Highway 12.

### Applicable Law and Legal Principles

The pertinent statutory law is found in Penal Code section 1111, which reads as follows: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." ▮ The corroboration required under the statute is not evidence of the corpus delicti, but evidence which *tends to connect* the defendant with the commission of the crime. (*People* v. *Wade*, 53 Cal.2d 322, 329 [1 Cal.Rptr. 683, 348 P.2d 116].) ▮ Corroborative evidence may be slight and entitled to little consideration when standing alone; and it may be circumstantial. (*People* v. *Wade, supra*, p. 329; *People* v. *Wayne*, 41 Cal.2d 814, 822 [264 P.2d 547].)

It is conceded by the appellants that a corpus delicti is established, and the testimony of the accomplice is sufficient to tie them into the offense and support the conviction if it is corroborated by other evidence. They assert, however, that such corroboration is insufficient under the test suggested in *People* v. *Morton*, 139 Cal. 719 [73 P. 609], to wit: " ' [E]liminate from the case the evidence of the accomplice, and then examine the evidence of the other witness or witnesses with the view to ascertain if there be inculpatory evidence—evidence tending to connect the defendant with the offense. If there is, the accomplice is corroborated; if there is no *inculpatory* evidence, there is no corroboration, though the accomplice may be corroborated in regard to any number of facts sworn to by him.' " (P. 724.) This rule was quoted with approval in *People* v. *Shaw* (17 Cal.2d 778, 803 [112 P.2d 241]) and in *People* v. *Hoyt* (20 Cal.2d 306, 312 [125 P.2d 29]). The appellants

accordingly lay considerable stress upon the use of the words "inculpatory evidence" and assert that when you eliminate the testimony of Quackenbush there is no inculpating evidence from the other witnesses which tends to connect either Moore or Van Buskirk with the crime.

In *People* v. *MacEwing*, 45 Cal.2d 218 [288 P.2d 257], the court states that the recent decisions have in substance phrased the rule as follows: "The corroborating evidence is sufficient if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the witness who must be corroborated is telling the truth." (P. 224.) (Citing *People* v. *Simpson*, 43 Cal.2d 553, 563 [275 P.2d 31] ; *People* v. *Gallardo*, 41 Cal.2d 57, 62 [257 P.2d 29] ; *People* v. *Barclay*, 40 Cal.2d 146, 156 [252 P.2d 321] ; see also *People* v. *Buono*, 191 Cal.App.2d 203, 217-218 [12 Cal.Rptr. 604].) In *Gallardo*, the court noted as follows: "Some of the cases state that the evidence must be 'inculpatory,' but this is used merely as another way of stating that it must tend to connect the defendant with the crime." (P. 62, fn.) (Citing *People* v. *Morton, supra,* 139 Cal. 719, upon which appellants so strongly rely, and also citing *People* v. *Shaw, supra,* 17 Cal.2d 778.)

The corroboration is not adequate if it requires aid from the testimony of the person to be corroborated in order to connect the defendant with commission of the offense charged. (*People* v. *MacEwing, supra,* 45 Cal.2d 218, 225.) It is not required, however, that the accomplice be corroborated as to every fact to which he testifies, (*People* v. *Simpson, supra,* 43 Cal.2d 553, 563) ; nor that the corroborating evidence by itself establish that the crime was committed or show all the elements thereof. (*People* v. *Gallardo, supra,* 41 Cal.2d 57, 63 ; *People* v. *Barclay, supra,* 40 Cal.2d 146, 156.) The question of the sufficiency of corroborating evidence is treated thusly in *People* v. *Yeager,* 194 Cal. 452, 473 [229 P. 40] : "[T]o corroborate an accomplice the evidence need not establish the actual commission of the offense, nor extend to every fact and detail covered by the statements of the accomplice, or to all the elements of the offense, nor prove that the accomplice has told the truth. The corroborative evidence must tend in some slight degree, at least, to implicate the defendant. While it need not be strong, more is required by way of corroboration than mere suspicion. It is sufficient if the corroborating evidence tends to connect the defendant with the commission of the offense, though if it stood alone it would be

entitled to little weight.'' It has also been held that ''corroboration need not be by direct evidence, but the *entire conduct* of the defendant may be looked to for corroborating circumstances and if, from those circumstances, his connection with the crime may be fairly inferred, the corroboration is sufficient.'' (*People* v. *Rice,* 29 Cal.App.2d 614, 620 [85 P.2d 215] ; emphasis added; *People* v. *Hoyt, supra,* 20 Cal.2d 306, 313.)

### *The Sufficiency of the Corroborating Evidence to Connect Van Buskirk With the Crime*

The respondent asserts that the following corroborating circumstances tend to connect Van Buskirk with the crime, to wit: the fact that he was seen with Moore in the burglarized tavern on the afternoon preceding the offense; his presence at 4 a. m. in the company of Quackenbush and Moore at Luzzi's residence for the purpose of borrowing gasoline; the alleged equivocal statement, i.e., '' 'Tell me,' . . . 'Which one copped out?' '' during the conversation testified to by Hayes; and finally, his alleged flight from Sonoma Valley to San Diego where he was arrested. The appellant Van Buskirk contends that none of these factors tend to connect him with the commission of the crime.

The relationship of Quackenbush, Van Buskirk and Moore, and all of their acts and conduct may be considered in determining whether there are corroborating circumstances. (*People* v. *Henderson,* 34 Cal.2d 340, 343 [209 P.2d 785] ; *People* v. *Ross,* 46 Cal.App.2d 385, 395 [116 P.2d 81] ; *People* v. *Willmurth,* 77 Cal.App.2d 605, 611-612 [176 P.2d 102].)

Although it has been held that the mere association with an accomplice in and of itself is insufficient evidence to connect a defendant with a crime (*People* v. *Braun,* 31 Cal.App.2d 593 [88 P.2d 728] ; *People* v. *Sawaya,* 46 Cal.App.2d 466 [115 P.2d 1001]), such association when considered in conjunction with other corroborating circumstances has been held to be a factor tending to connect an accused with the commission of the offense. (*People* v. *Hoyt, supra,* 20 Cal.2d 306 ; *People* v. *Willmurth, supra,* 77 Cal.App.2d 605 ; *People* v. *Henderson, supra,* 34 Cal.2d 340.) In *Hoyt,* three of the defendants were seen in the company of the accomplice prior to and after the offense. There was also testimony by an independent witness that Hoyt, one of the defendants, had been seen by him making the blackjack which proved to be the murder weapon; that two of the defendants had changed their blood-spattered clothes, and that Hoyt told him he had bludgeoned a grocer with a black-

jack during a holdup. In *Willmurth,* the corroborating evidence was to the effect that the defendant, Willmurth, was with the accomplice and one Johnson (who had admitted his part in the burglary to the police) on the day of the burglary. The accomplice had testified to knowing Johnson and also testified that Johnson participated in the burglary; and that a pencil flashlight identical with that testified to by the accomplice as being used by Willmurth in the burglary was found in the latter's car at the time of his arrest. In *Henderson,* independent testimony established that the accomplice and the defendant were together the day preceding the robbery and that they were together about three hours before the crime was committed. The additional circumstances consisted of testimony, other than by the accomplice, that on the day preceding the robbery a .410 gauge shotgun was purchased by the defendant; that such a shotgun was used in the robbery; and that the robbers wore hoods of the same description as testified to by the accomplice.

In the instant case the mere association of Van Buskirk with Moore on the afternoon of the offense, would, in itself, give rise to no more than a suspicion of guilt. This association when coupled with the presence of the three men at Luzzi's place at 4 a. m., however, is a circumstance worthy of consideration in conjunction with the other factors we shall hereafter mention. It should be noted here that Uvdic testified that the burglary took place between 1:15 and 7:15 a. m.; and that while Luzzi was uncertain as to whether this visit occurred on the very morning of the burglary or the next morning, there was sufficient evidence from which the trier of fact could infer that it occurred on the same day as the burglary (i.e., Luzzi's testimony that he heard rumors of the burglary later on the same day of the early morning visit). Luzzi corroborated not only Quackenbush's testimony that the visit was at 4 a. m., but that the defendants were riding in Quackenbush's car. This would substantiate Quackenbush's testimony that his car was used in the burglary. We are satisfied that the trier of fact could fairly infer that the riding together of these three men at 4 a. m. in an automobile owned by Quackenbush shows circumstances in corroboration of Quackenbush's testimony that he, Moore and Van Buskirk had burglarized the tavern shortly after 1 a. m. and had driven 2 miles up Trinity Mountain Road in Quackenbush's car where they "dumped" the safe. It should be noted further as a corroborating circumstance, that Inspector Hayes testified that

596

the safe was found on Trinity Road about a mile from Luzzi's residence.

 Independent corroborative evidence may consist of the silence of the accused in the face of accusatory statements or in an evasive or equivocal reply thereto. (*People* v. *Willmurth, supra,* 77 Cal.App.2d 605, 611-616; *People* v. *King,* 40 Cal.App.2d 137 [104 P.2d 521]; *People* v. *Collins,* 4 Cal. App.2d 86, 87 [40 P.2d 542].) Accusatory statements are hearsay and may find their way into the record only as admissions, under the familiar exception to the hearsay rule. (*People* v. *Simmons,* 28 Cal.2d 699, 712 [172 P.2d 18].)

 The rule is stated thusly in *Simmons*: "If the accused responds to the statement with a flat denial, there is no admission and hence nothing that may be received in evidence. If, on the contrary, the truth of the statement is admitted, the statement may properly be introduced. A third situation is presented when the accused stands mute in the face of the accusation or responds with an evasive or equivocal reply. In that situation this court has held that *under certain circumstances* both the statement and the fact of the accused's failure to deny are admissible on a criminal trial as evidence of the acquiescence of the accused in the truth of the statement or as indicative of a consciousness of guilt." (P. 712.) The court went on to further state: "The theory underlying this rule is that the natural reaction of an innocent man to an untrue accusation is to enter a prompt denial." (P. 712.) Where the accused stands mute or responds with an evasive or equivocal reply, it is for the trial court to determine in the first instance whether the accusation has been made under circumstances calling for a reply, whether the accused understood the statement, and whether his conduct was such as to give rise to an inference of acquiescence or guilty consciousness. If the trial judge determines that such an inference may be drawn, the statement is then admitted, not as substantive evidence in proof of the fact asserted, but merely as a basis for showing the reaction of the accused to it. (*People* v. *Simmons, supra,* 712-713; *People* v. *Willmurth, supra,* 77 Cal. App.2d 605, 614-615.) Upon the trial court's determination that the import of the statement is such that it would furnish a foundation for proof of conduct, the jury (or the judge, if the case is tried without a jury) is then called upon to decide whether the accused was aware that the statements were made, whether, under all the circumstances shown, they called for a disclaimer, whether the accused did reply to them, and whether

if he did not do so, such failure showed criminal intent or a consciousness of guilt. (*People* v. *Simmons, supra,* p. 713; *People* v. *Yeager, supra,* 194 Cal. 452, 486.) "If these propositions of fact are resolved in favor of the prosecution the item of conduct should be given the effect to which upon the entire case it is entitled." (*People* v. *Yeager, supra,* p. 486.)

In the instant case Van Buskirk objected to the admissibility of Inspector Hayes' conversation with him on the ground that it was hearsay. The objection was overruled. The propriety of that ruling is challenged, it being Van Buskirk's further contention that Hayes' statement concerning the fact that Moore and Quackenbush were in custody and that one of them had confessed to the burglary and had involved all three of them was not accusatory but merely casual and inquisitive. ▉ An accusatory statement is a statement expressed directly to a person or in his presence accusing him of a crime or tending to connect him with its commission. (*People* v. *Abbott,* 47 Cal.2d 362, 373 [303 P.2d 730]; see CALJIC Instruction No. 30, approved in *People* v. *Davis,* 48 Cal.2d 241, 251 [309 P.2d 1]; *People* v. *Wein,* 50 Cal.2d 383, 402 [326 P.2d 457].) It is "a statement . . . made by another person in the presence of a party to the action, containing assertions of fact which, if untrue, the party would under all the circumstances naturally be expected to deny. . . ." (McCormick on Evidence, § 247, p. 528.)

▉ We are satisfied that the statement made by Inspector Hayes is accusatory. While it did not specifically charge Van Buskirk with the crime of burglary, it did accuse him of involvement in its commission. It thus tended to connect him with its commission. It was for the trial court to determine in the first instance whether this accusation called for a reply, whether the reply was evasive or equivocal, and whether the conduct was such as to give rise to an inference of guilty consciousness.

▉ It has been consistently held in this state that an accusation of crime does call for a reply even from a person in police custody. (*People* v. *Simmons, supra,* p. 715; *People* v. *Gotham,* 185 Cal.App.2d 47, 55 [8 Cal.Rptr. 20].) ▉ Under such circumstances, however, the court in determining in the first instance whether such evidence is admissible should fully consider the question of whether the accused replied under restraint; whether the circumstances under which the accusation was made called for a reply; whether the accused understood the statement; and whether his conduct merely indicated

a desire to avail himself of the rule against self-incrimination or whether it could reasonably give rise to an inference of acquiescence or guilty consciousness. (*People* v. *Simmons, supra,* p. 716.) Accordingly, any accusatory statement and a response thereto made by a defendant under restraint should be considered with great caution, and if police questioning has been insistent, so that the defendant has been induced or persuaded against his better or more considered judgment to make a response or has adopted the policy of silence, the accusatory statement should be held inadmissible by the trial judge in the first instance. (*People* v. *Simmons, supra,* pp. 718-719; *People* v. *Parks,* 151 Cal.App.2d 537, 539-540 [311 P.2d 874].)

In the instant case we do not have a flat denial by Van Buskirk. He did not deny being involved in the burglary, nor did he remain completely silent. His first reply consisted of a question put to the accuser, i.e., " 'Which one copped out?' . . .'' This reply was not directly responsive to the accusatory statement. It was after this reply that Van Buskirk then stated that he declined to discuss the matter further without an attorney. This latter statement poses the question as to whether the accused replied under restraint or under circumstances which indicated a desire to avail himself of the rule against self-incrimination so as to make the accusatory statement and the reply thereto inadmissible. In *People* v. *Parks, supra,* 151 Cal.App.2d 537, the defendant declined to answer any questions addressed to him, stating that he did not want to talk " 'about anything' '' until he " 'talked to an attorney.' '' (P. 538.) This statement was made after the defendant had been in custody for four days; after he had been questioned by four officers at the time of his arrest and at which time he had denied his guilt; and after having again insisted he was innocent the day following his arrest upon further interrogation. It was held in *Parks* that the circumstances there foreclosed the admissibility in the first instance of an accusatory statement to the effect that the defendant had been identified by two persons as " ' ''the person who robbed the bottle shop twice.'' ' '' (P. 539.) In *People* v. *Graney,* 48 Cal.App. 773, 774 [192 P. 460], it was held that evidence of the silence of an accused in custody, in the face of an accusation of crime against him, was admissible even though the accused stood mute upon the advice of counsel. (*People* v. *Sanchez,* 35 Cal.App.2d 231, 235 [95 P.2d 169].) It has also been held that even where there is a denial of guilt,

if such denial is followed by or is coupled with false or evasive replies or the admission by the accused of special facts or circumstances tending to prove guilt, the conduct of the accused is admissible as showing a consciousness of guilt and the accusation is admissible to prove that conduct. (*People* v. *Gallagher*, 168 Cal.App.2d 417, 428 [336 P.2d 259]; *People* v. *Goldstein*, 136 Cal.App.2d 778, 792 [289 P.2d 581]; *People* v. *Williams*, 189 Cal.App.2d 29, 38 [11 Cal.Rptr. 43].)

Under the circumstances of the instant case and in accordance with the principles announced in *Simmons, Gallagher, Goldstein* and *Williams,* we cannot say that there was an abuse of discretion on the part of the trial court in admitting both the accusatory statement and the response in the first instance. There are no circumstances here present which indicate any insistent police questioning or that the statements made by Van Buskirk in the face of the accusation were an attempt to exercise his constitutional privilege against self-incrimination. His first response, " 'Which one copped out?' " was voluntary. Upon his indication that he did not wish to discuss the matter further without an attorney the officer terminated his interrogation.

As we have pointed out above, an accusatory statement is admitted only to show the reaction of the accused. Whether Van Buskirk's reaction showed consciousness of guilt under all the circumstances was a question of fact for the trial judge. While no evidence was adduced as to the meaning of the term "copped out" the trial judge could take judicial notice of such meaning. It is an established principle of law that judicial notice may be taken of the meaning of terms which are used with colloquial application by persons of the criminal class. (*People* v. *Powell*, 1 Cal.App.2d 222, 224 [36 P.2d 201].) In such parlance the words "copped out" are the vernacular for admission of guilt, a confession, or plea of guilty. (See *People* v. *Hurley*, 151 Cal.App.2d 339 [311 P.2d 49]; and see "cop a plea," defined: "to plead guilty to a lesser charge in order to avoid standing trial for a more serious one. . . ." Webster's New Internat. Dict. (3d ed. 1961).) Van Buskirk told Hayes that he was acquainted with both Moore and Quackenbush. At the time the accusatory statement was made these three defendants had been jointly charged upon a complaint with the crime of burglary and Van Buskirk had been arrested upon a warrant issued pursuant thereto. The trial court was therefore justified in the inference that Van Buskirk, being aware that he was so

charged, showed a consciousness of guilt in inquiring which of his codefendants had " 'copped out.' "

 Flight is a factor tending to connect an accused with the commission of an offense. (*People* v. *Hoyt, supra,* 20 Cal.2d 306; *People* v. *Rice, supra,* 29 Cal.App.2d 614.) Standing alone, it is not sufficient to establish guilt; but flight immediately after the commission of an offense is a circumstance that may be considered, with other facts in the case, as tending to show a consciousness of guilt. (*People* v. *Leach,* 90 Cal.App.2d 667, 671 [203 P.2d 544]; *People* v. *Peak,* 66 Cal.App.2d 894, 910 [153 P.2d 464]; Pen. Code, § 1127c.)

 Whether or not the factor of flight is shown is a question of fact. (*People* v. *Caldera,* 173 Cal.App.2d 98, 101 [342 P.2d 945]; *People* v. *Peak, supra; People* v. *Bennett,* 122 Cal. App.2d 244, 252 [264 P.2d 664]; Pen. Code, § 1127c.) In *Bennett* the defendant departed from the state a short time after the commission of the crime and remained away until about the time he was apprehended. It was there held that an instruction on flight was properly submitted to the jury and that the weight and credence to be given the testimony of the defendant in reference to his departure and the claimed reasons therefor were likewise questions for the jury to determine. In *Peak,* the defendant disappeared the day an indictment was returned against him, remained away for approximately one week and then returnd and surrendered. The court there stated that whether he knew the indictment would be or had been filed, his intention in leaving and his intention in returning were all matters to be determined by the jury upon the facts presented. In *People* v. *Rokes,* 18 Cal.App.2d 689 [64 P.2d 746], the defendant left Los Angeles shortly after the commission of the crimes and went to San Francisco. "This was sufficient evidence," said the court, "coupled with the other testimony relative to his participation in the crimes, to warrant the court in giving the jury an instruction relative to the law of flight." (P. 693.) The "other testimony," there, was that of the accomplices. In the instant case the factor of Van Buskirk's departure from Sonoma Valley to San Diego shortly after the commission of the burglary was a circumstance for the consideration of the trial court. Whether such departure constituted intentional flight was for the determination of the trial judge.

Van Buskirk made no attempt, by his own testimony, or otherwise, to contradict, explain or deny any of the circumstances against him. The mere failure to testify is not sufficient corroboration in itself, but it may add weight to

other corroborative evidence *after* the prosecution has made a prima facie case. (*People* v. *Ashley,* 42 Cal.2d 246, 268-269 [267 P.2d 271] ; and see *People* v. *King, supra,* 40 Cal.App.2d 137, 141; *People* v. *Willmurth, supra,* 77 Cal.App.2d 605, 613.)

In the present case there was sufficient corroborative evidence, exclusive of the failure to testify, to establish a prima facie case. The trial court was thereupon justified in considering Van Buskirk's failure to deny or explain such evidence in determining the weight it was to be given.

We are satisfied that the cumulative effect to the foregoing circumstances adequately furnishes corroboration of Van Buskirk's participation in the burglary independently of the testimony of the accomplice, Quackenbush.

### *The Sufficiency of the Corroborating Evidence to Connect Moore With the Crime*

The corroborating circumstances urged by the respondent with reference to Moore are as follows: Moore's association with Quackenbush; Moore's failure to testify; the borrowing by Moore of $2.00 the day before the burglary and the repayment of a $125 loan the day after its commission with the sum of $150, consisting of a $100 bill and a $50 bill; and the payment shortly after the burglary of a $50 debt owed by his wife.

What we have hereinabove said concerning Van Buskirk's association with Quackenbush, particularly the early morning visit at Luzzi's residence, is applicable to Moore. We are also satisfied in the light of the principles hereinabove discussed that Moore's impecunious circumstances the day before the burglary, the unexplained acquisition of funds by Moore, and the loan repayment to Luzzi in the uncommon denominations of $100 and $50, when coupled with the fact that the burglarized safe contained a $100 and a $50 bill, point sufficiently in their cumulative effect to the code requirements of evidence tending to connect Moore with the commission of the burglary. These corroborative factors likewise establish the prima facie case as to Moore and thus warranted the trial court's consideration of Moore's failure to testify in determining the weight to be given such corroborative evidence.

The judgment is affirmed as to both appellants.

Bray, P. J., and Sullivan, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 6, 1963. Peters, J., was of the opinion that the petition should be granted.