[Crim. No. 4621. First Dist., Div. Two. Apr. 29, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. STERLING McDOWELL, Defendant and Appellant.

Sterling McDowell, in pro. per., and Norman S. Nayfach, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and John F. Kraetzer, Deputy Attorneys General, for Plaintiff and Respondent.

AGEE, J.—Defendant appeals from a judgment entered upon a jury verdict convicting him of robbery of the first degree and assault with a deadly weapon.

On Sunday morning, October 13, 1963,[1] about 4:30, Yellow Cab driver Adams was dispatched to 819 Brockhurst Street,

---

[1] All dates refer to the year 1963.

Oakland. Appellant came out of the house at that address, entered the cab and was driven at his direction to 1925 13th Avenue, Oakland.

Upon arriving there, appellant held up Adams at gunpoint, obtained his money, and ordered him to drive off. Instead of going forward, Adams attempted to back the cab into appellant. The latter jumped up on the sidewalk and fired one shot toward Adams. Appellant ran up some stairs and fired one more shot before disappearing from the cab driver's view. Neither shot hit Adams or the cab.

Adams testified to the foregoing facts at the trial. Inspector McConnell of the Oakland Police Department then testified to a signed statement taken from appellant on October 28.

The following portions of the statement were read to the jury: " 'I was living at the California Hotel [in Oakland] from Labor Day until after October the 8th or 9th and I went to Los Angeles. It was on Tuesday [October 8]. I went by myself. I went on the Greyhound Bus. I got in Los Angeles on Wednesday morning. I went to a friend of mine's house. His name is John Thomas. I believe he lives at 4627 Arlington Avenue. His phone is AX 6-1197. . . . I also saw a friend of mine named Ulysses Wilkerson. He lives at 2406 Ridgely Drive, phone 931-9665. I saw him on the Wednesday [October 9] I came down.' "

The prosecution next called Ulysses Wilkerson. He testified that he lived at 2406 S. Ridgley Drive, Los Angeles; that on Monday, October 14, appellant visited him at his home; that he had not seen the appellant during October at any time prior to the visit of October 14th.

Appellant was his only witness. He testified that he left Oakland on October 9 and went to Los Angeles; that he did not return until October 21; that on October 13 (date of robbery) he was in Los Angeles; that he first found out about the robbery when questioned by the police on October 28. He did not deny the making of the statement testified to by Inspector McConnell.

 Appellant's first contention is that it was error to allow Inspector McConnell to relate the substance of the accusatory words which preceded the appellant's above quoted response thereto. The inspector testified that appellant "was told that he was being accused of holding up a taxicab on the 13th of October, that he had called the cab to his girl friend's house, gotten in the cab, went out to 13th Avenue where he robbed the cab and fired a couple of shots."

It is true that where a defendant makes a flat denial in response to an accusatory statement, neither the statement nor the response is admissible. (*People* v. *Simmons*, 28 Cal.2d 699, 712 [172 P.2d 18].) However, appellant's response to the accusation was to give a false alibi.

In *People* v. *Whitehorn*, 60 Cal.2d 256 [32 Cal.Rptr. 199, 383 P.2d 783], the Supreme Court held that where a defendant's denial of guilt is "coupled with other conduct of the accused which is of evidentiary importance, such as where false and evasive replies are made together with a denial, the evidence [accusatory statement and defendant's response] may be received." (P. 262.)

As stated in *People* v. *Moore*, 211 Cal.App.2d 585, at p. 599 [27 Cal.Rptr. 526], "if such denial is followed by or is coupled with false or evasive replies or the admission by the accused of special facts or circumstances tending to prove guilt, the conduct of the accused is admissible as showing a consciousness of guilt and the accusation is admissible to prove that conduct. [Citations.]"

In *People* v. *Miller*, 19 Cal.App.2d 708 [66 P.2d 448], the victim of a robbery confronted defendant, who was then in custody, with the statement that he, defendant, " 'held me up about two and a half years ago.' " Defendant replied that this was impossible because he had been in jail at the time. On the trial it was proven that defendant was not in jail at the time in question but was living in an apartment house in Pasadena.

In passing on the sufficiency of the evidence to support the conviction, the court stated: "False statements made by one who has been confronted with an accusation of the commission by him of a criminal offense have repeatedly been held to constitute proper evidence of consciousness of guilt." (Pp. 709-710.)

Appellant herein complains that an accusation carries with it the implication that the accuser claims to have information that the alleged facts contained therein are true. This aspect is one of the reasons why our courts have held that any accusatory statement and the response thereto made by a defendant under restraint should be considered with great caution. (See *People* v. *Simmons*, *supra*, pp. 718-719; *People* v. *Moore*, *supra*, p. 598.)

The question is one which is left largely to the trial court to determine under the particular circumstances of each case.

In the instant case we do not think that the trial court

abused its discretion in admitting both the accusatory statement and appellant's response thereto.

Appellant also complains that the foregoing evidence "served to impair appellant's alibi substantially even before the jury had heard from the defendant himself." We take this complaint to mean that the prosecution should not have introduced such evidence as a part of its case in chief but should have waited until the appellant introduced evidence in support of an alibi.

We have held that the evidence was properly admitted as showing a consciousness of guilt. In *People* v. *Singh*, 182 Cal. 457 [188 P. 987], our Supreme Court stated: "Any competent evidence which tends to rebut the presumption of innocence is always admissible as a part of the prosecution's case in chief." (P. 479.) The holding was that "the state was not required to defer its attack [upon a fabricated alibi] until evidence in support of the alibi was first introduced." (P. 478.)

We do not believe that appellant's observation, that the prosecution's "anticipation" of his defense limited his "freedom to choose not to take the stand," warrants discussion. Any strong prosecution case puts a defendant in this dilemma.

Appellant speculates that the reading of only portions of his written statement might "permit the jury to infer that appellant had signed a statement of confession" which had not been admitted "for obscure technical reasons." The record does not support any such inference. Furthermore, appellant made no effort to have any other portions of the statement read to the jury.

Appellant's second contention is that it was prejudicial error for the court to permit the prosecution to ask appellant on cross-examination concerning his acquaintance with one Marjorie Robinson and one Barbara Johnson because such questions were outside the scope of the direct examination.

Section 1323 of the Penal Code provides in pertinent part that if a defendant in a criminal action "offers himself as a witness, he may be cross-examined by the counsel for the people as to all matters about which he was examined in chief."

The effect of appellant's testimony on direct examination was a denial of guilt. He achieved this effect by testifying that he was in Los Angeles from October 9 to October 21. This is obviously a denial that he could have been the man who came out of the house at 819 Brockhurst, Oakland, on October 13 at 4:30 a.m. and entered a taxicab.

In considering the scope of permissible cross-examination of appellant, we construe his direct examination in the same light as though his counsel had directly asked him if he was "the man who came out of 819 Brockhurst," et cetera, and appellant had answered that he was not.

As stated in *People* v. *Diaz,* 206 Cal.App.2d 651, 669 [24 Cal.Rptr. 367], quoting from another case: " ' ' "A defendant cannot, by testifying to a state of things contrary to and inconsistent with the evidence of the prosecution, thus indirectly denying the testimony against him, but without testifying expressly with relation to the same facts, limit the cross-examination to the precise facts concerning which he testifies. He can be cross-examined with respect to facts or denials which are necessarily implied from the testimony in chief, as well as with respect to facts which he expressly states." ' ' "

On cross-examination appellant was asked: "Q. Now before October 13th, 1963 did you have occasion to know a person by the name of Marjorie Robinson?" Following objection, the prosecution made an offer of proof (outside of the presence of the jury) that Marjorie lived at the Brockhurst address and appellant knew her. The court thereupon overruled the objection. Appellant then answered that "I have known Margie several years" and that "when I left Oakland going to Los Angeles on the 9th, she lived there [819 Brockhurst]." He also admitted that he had visited her at that address.

It seems clear that the prosecution's questions which elicited the foregoing testimony did not exceed the scope of appellant's direct examination. Its relevancy is that it lends credence to the cab driver's testimony that the fare who came out of 819 Brockhurst at 4:30 o'clock in the morning was the appellant.

As stated in *People* v. *Diaz, supra,* cross-examination may be directed to the eliciting of any matter which may tend to overcome or qualify the effect of the testimony given by a defendant on his direct examination. (P. 669.)

Appellant also testified on cross-examination that Barbara Johnson was a friend of his but that he did not know that she lived at 1930 13th Avenue. No further questions were asked concerning Barbara and she was never mentioned again in the presence of the jury.

Whether Barbara lived at the above address and whether appellant knew that she did were matters of evidentiary

importance. This address was close by where appellant departed from the scene of the robbery. ■ When a defendant takes the stand and makes a general denial of the charges against him, the permissible scope of cross-examination is very wide. (*People* v. *Zerillo,* 36 Cal.2d 222, 228 [223 P.2d 223] ; *People* v. *Taylor,* 189 Cal.App.2d 348, 354 [11 Cal.Rptr. 150].)

■ Appellant's third contention is that it was misconduct for the prosecutor to ask appellant if it were not a fact "that on the 13th of October that you had received information that possibly the cab driver had been killed, that you went to Los Angeles after having heard this information?" Appellant's answer was, "No, sir." The question and answer came in without objection. No further questions were asked of appellant.

At the end of that trial day, outside of the presence of the jury, appellant's counsel asked for a showing by the prosecutor of his good faith in asking the above question. The prosecutor stated that Inspector Madsen of the Oakland Police Department was told by the Johnson woman that she had been contacted by the Robinson woman and that the latter had said that one of them "had to get hold of Sterling McDowell [appellant] to inform him that the cab driver was going to die, and he should get out of Oakland as soon as possible, and it was on the basis of this information that I [the prosecutor] propounded the question." The court ruled that this was a sufficient showing of good faith.

On the following day, again outside the presence of the jury, defense counsel requested that the court admonish the jury to disregard the question and answer. The request was denied. We find no error in the ruling.

■ Where no objection is made to a question at the time it is asked, the general rule is that any claim of error based upon the asking of such question will not be considered on appeal. (*People* v. *Finnegan,* 192 Cal.App.2d 151, 157 [13 Cal.Rptr. 264] ; *People* v. *Cox,* 174 Cal.App.2d 30, 39-40 [344 P.2d 399] ; *People* v. *Filcher,* 169 Cal.App.2d 651, 654 [337 P.2d 588].)

■ We think that this rule should be applied here. Moreover, to tell the jury a day later to disregard the subject question and appellant's answer thereto would in our opinion only serve to emphasize any harm to appellant that may have resulted from the asking of the question.

It must also be kept in mind that *all* that the jury ever

heard of this matter was the one question as to whether appellant "had received information [without implying the source] that possibly the cab driver had been killed, that you went to Los Angeles after having heard this information." Appellant's denial ended any further mention of the matter in the presence of the jury. Appellant was not materially prejudiced by the asking of the question.

Appellant's closing brief raises the question as to whether the exclusionary rule of *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], is applicable to the alibi statement made by appellant to the police.

*Dorado* involves a confession and *Escobedo* involves statements admitting knowledge of the crime, *viz.,* " ' ' "I didn't shoot Manuel, you did it," ' " plus what the court described as "additional statements further implicating himself in the murder plot."

In the instant case, appellant's statement is neither a confession nor an incriminating admission. It is an exculpatory statement which (unlike *Escobedo*) in no way implies any knowledge of the crime.

In *People* v. *Ulibarri* (Feb. 3, 1965) 232 Cal.App.2d 51 [42 Cal.Rptr. 409], appellant and one Funk were jointly charged with conspiracy to commit petty theft, "clouting" parking meters. They were caught redhanded but appellant stated to the police that "he had not met Funk before and had only momentarily stopped him to ask directions to some hot night spots in town." He also gave a wrong residence address to the police.

At the trial the prosecution proved that appellant lived in the same apartment building as Funk did and that he had been seen conversing with Funk at that location prior to the commission of the offense.

The court stated: "Ulibarri made no confession or admission. On the contrary, what he said to the police would, if it had been true, have been helpful to him. . . . The *Dorado* rule, we believe and hold, does not purport to protect the accused from the effects of his deliberate mendacity to the police, which he has tried to make useful in his own behalf but which has been exposed and has backfired on him." (Pp. 55-56.) (On March 31, 1965, our Supreme Court unanimously denied a hearing in *Ulibarri.*)

We have read the record carefully. It would be unreasonable to believe that the admittance of appellant's statement

could have affected the result. It was in no way contrary to the testimony he gave at the trial. If error was committed it was not reversible error within the meaning of section 4½ of article VI of the California Constitution.

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 23, 1965.