[Crim. No. 4059.   First Dist., Div. Three.   Apr. 30, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES DAVID HAMILTON, Defendant and Appellant.

George T. Woods, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Robert B. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

DEVINE, J.—Appellant was convicted of violation of section 11500 of the Health and Safety Code in possessing unlawfully a preparation of codeine. He makes two points: that he was convicted by the use of evidence obtained by means of an illegal entry, search and seizure; and that there is insufficient evidence to support the conviction.

On November 30, 1960, police officers received teletype information that one Richard Lyons, an escapee from the county jail, might appear at the intersection of Hayes and Scott Streets in San Francisco. Going there, the police questioned a man in a parked car, and found his name to be Jack Wilson, who, shortly after he had left the scene, was found to be an associate of Lyons. This information came by radio from the Inspectors Bureau; the inspectors had talked to Jack Wilson and to Lyons at some time. The officers learned from Wilson's wife and mother-in-law that Wilson lived with his brother at Gambetta Street in Daly City, San Mateo County, and they proceeded to that place at about midnight. They knocked and kicked on the door, and called out that they were the police, whereupon they heard a male voice say, "Let's get the heck out of here," and heard a sound of movement, like that of people running, which one officer described as a "large commotion."

A door to an alleyway adjacent to the building was partly ajar. Sergeant Gallindo, having previous knowledge that it was an alleyway door, pushed it completely open and saw a man coming out of the back door of the building. The other officers pursued the man, who ran, or trotted, or walked rapidly, according to testimony of the officers. The man was appellant Hamilton, but he resembled the description of Lyons, especially in having tattoo marks on his arms, and Gallindo thought he had captured Lyons. Appellant, who was unable or unwilling to give his name, was arrested and was brought into the apartment house, through the back door which had not been closed by appellant, and the police attempted to establish his identity. They were not able to satisfy themselves that he was not Lyons until appellant was brought to the police station. Appellant was incoherent, his face was red, his eyes were dilated and held in a fixed position, and he had fresh puncture marks on his arms. A hypodermic needle was seen in plain view on the floor, and a double needle container, an eyedropper and a blackened spoon were found at various places within the room, one or more items being discovered under the sofa. The officers searched the whole apart-

ment and found bottles containing narcotics under an old-style bathtub. Ben Wilson had locked himself in the bathroom but emerged to face arrest and trial with appellant, and was found guilty. Appellant refused to take a Nalline test.

Appellant testified that he had been drinking and that he had fled the apartment to avoid questioning by the police, a process which he said had been distressing to him on other occasions when he had not beeen charged with crimes.

■ The arrest and search were reasonable, although they did not produce the result which the police had intended, the apprehension of the escapee Lyons, because as each event occurred and as each new item of evidence was acquired by the police, another event and another item followed, culminating in the discovery of the narcotics. At the trial, counsel for Hamilton, in objecting to the admissibility of the narcotics in evidence, took the position that illegal search commenced with entry into the house, following the arrest. On appeal, appellant's counsel (who was not trial counsel) contends that the arrest itself was illegal and that the search was illegal from the point of opening the alleyway door. Although we believe that appellant waived objection based upon any asserted illegality of arrest or of search up to the point of entry into the house, we are also of the opinion that the arrest and the very limited amount of search, prior to arrest, consisting of pushing the alley door farther open, were justified. The police had information that Jack Wilson was an associate of the escapee Lyons and that Wilson was living at the Gambetta Street house, and they had the right to interview a suspect or witness at his home. (*People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852]; *People* v. *Elliott,* 186 Cal.App.2d 178, 182 [8 Cal.Rptr. 795].) When, after announcing that they were police, they heard a sound like that of people running and a proposal from within, "Let's get the heck out," they were entitled to make the very slight entry, if entry it was at all, of pushing the alley door farther open.

By opening wider the alley door, the officers could see a man hurrying away, and, knowing that this man had been informed of the presence of the police, under all of the circumstances the officers were justified in concluding that a crime had been committed. (*People* v. *Maddox,* 46 Cal.2d 301, 306 [294 P.2d 6]; *People* v. *Martin,* 46 Cal.2d 106, 108 [293 P.2d 52]; *People* v. *Garnett,* 148 Cal.App.2d 280 [306 P.2d 571]; *People* v. *Machado,* 180 Cal.App.2d 63, 68 [4 Cal.

Rptr. 110].) They noticed the similarity between the fleeing person and Lyons, and were justified in making the arrest.

The entry of the police officers to the house whence defendant had made his brief flight, an entry made through one or more open doors, was justified as a search incident to arrest. It is argued by appellant that from the moment of his arrest the police believed, although mistakenly, that they had accomplished what they had set out to do, that is, to capture the escapee, and therefore entry of the premises without a search warrant was illegal. However, the officers testified that they were not sure that the captured man was Lyons, and, as noted above, appellant did not, and possibly could not, identify himself. The officers therefore were quite within their rights in entering the house for the purpose of pursuing their inquiry as to appellant's identity, and determining if any person remaining in the house actually was Lyons, or was helping Lyons, or was participating in the commission of some other crime which had caused appellant's precipitate and unsuccessful flight.

One of the officers saw, in open view, the hypodermic needle; and the condition of appellant indicated that he had been using narcotics. The officers need not have blinded themselves to what was in plain sight simply because it was disconnected with the purpose for which they entered. (*People* v. *Mills*, 148 Cal.App.2d 392, 399 [306 P.2d 1005]; *People* v. *Miller*, 193 Cal.App.2d 838, 842, 843 [14 Cal.Rptr. 704].) When the equipment commonly used in administering narcotic injections had been found, and the condition of appellant had been observed, the officers were justified in searching the whole apartment. (*People* v. *Carswell*, 51 Cal.2d 602, 607, 608 [335 P.2d 99].)

The evidence is sufficient to sustain the conviction of appellant as having possessed the preparation of codeine, in violation of section 11500 of the Health and Safety Code. His appearance, as described above, the needle marks on his arms, the testimony of the officers, who had worked on many cases dealing with narcotics, that appellant was under the influence of narcotics, and appellant's flight from the scene are sufficient circumstantial evidence that defendant was a possessor, if he was not the sole possessor, of the narcotic. (*People* v. *Magdaleno*, 158 Cal.App.2d 48 [322 P.2d 89].)

Judgment and order denying new trial affirmed.

Draper, P. J., and Salsman, J., concurred.