[Civ. No. 27838. Second Dist., Div. Three. Feb. 18, 1964.]

SIMON FLORENCIO MARTINEZ, Petitioner, v. THE SUPERIOR COURT OF SANTA BARBARA COUNTY, Respondent.

Jack A. Otero for Petitioner.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow, Deputy Attorney General, Vern B. Thomas, District Attorney, and V. Edward Drake, Deputy District Attorney, for Respondent.

FILES, J.—The issue here is whether the testimony of a police officer concerning accusations made in the presence of the defendant and defendant's conduct in relation thereto constituted proof connecting defendant with the offense charged sufficient to support the magistrate's· order holding him to answer.

Petitioner seeks a writ of prohibition under Penal Code, section 999a, to restrain respondent superior court from proceeding to trial on an information filed after a preliminary hearing in which petitioner and defendant Joseph Daniel Sanchez, not a party to this proceeding, were charged with burglary, in violation of Penal Code, section 459.

The record contains ample evidence that on the evening of August 8, 1963, two Santa Barbara residences were burglarized. Officer Thompson of the Santa Barbara Police Department, detective bureau, testified at the preliminary hearing that he investigated the burglaries. He said that on the morning of August 10 he had a conversation with defendant Sanchez, who was then in custody for the two burglaries; that Sanchez listened to a tape recording in which his sister said that Sanchez, petitioner Martinez, and another man were the burglars; and that thereafter Sanchez freely and voluntarily told the witness that ''the three of them had pulled the burglary, that he and Martinez and Lopez had pulled the burglary.'' On behalf of Martinez an objection to this testimony as hearsay was made and sustained.

Officer Thompson then testified that on the next day he had a conversation with Martinez, which he related as follows: ''Well, I told him that he was in on the two burglaries, and that Lopez and Sanchez had told the truth on the burglaries and that I wanted to hear his story. And he said he didn't know anything about it, so I took him out of the room and we listened to the same part on the tape recorder of Mrs. Garcia's statements naming him, Sanchez, and she didn't know the other boy's name, as having brought the articles to her house. We then went back into the interview room, and he refused to say anything. I brought Robert Lopez into the room, and Robert Lopez said that the three of them had pulled the burglary, that it was all three of their ideas, that he and Martinez and Sanchez all three pried the window at the house on San Clemente, that they had removed the tables, all three of them had removed the property from the house, that when they brought the property to Sanchez's sister's house - that is Mrs. Garcia - that Lopez said he carried up the

radio, that Martinez and Sanchez carried the tables, making two trips, that they stayed up there for a while and sat around and talked, and that they left. Sanchez—excuse me—Martinez made no statement at all, he just stared straight ahead; and we were in there—the conversation took place for maybe about fifteen minutes or so. And Martinez at this time made no denials. Q. Did you accuse Mr. Martinez? A. Yes, I did. Q. Did you have any further conversation with him concerning these two burglaries? A. Yes. I accused him and I said, 'Now you see all the evidence we have, so why don't you tell the truth?' He says, 'I have nothing to say. I don't want to talk about it.' And he would never deny it. I accused him several times. ▆▆ The only statement that he did make: I said, 'Well, I see you're back in trouble. When are you going to straighten out?' He says, 'I guess this is going to straighten me out.' "

There is nothing else in the record connecting Martinez with the offenses.

It is a familiar doctrine that under some circumstances a defendant's silence in the face of an accusation may be taken as some evidence against him.

In *People* v. *Abbott*, 47 Cal.2d 362, 373 [303 P.2d 730], the court said: "In general, where a statement accusing a defendant of a crime or tending to connect him with its commission has been made to him, and he has remained silent or has given an equivocal or evasive reply, evidence of the statement and of his conduct is admissible on the theory that the natural reaction of an innocent man would have been to make a denial and that, therefore, his failure to deny may be regarded as giving rise to an inference of acquiescence in the truth of the statement or as indicating a consciousness of guilt. However, where the defendant remains silent under a claim of right to which he is legally entitled, such an inference is not justified and the evidence may not be admitted."

▆▆ A person accused of crime has no duty to discuss the case with his accusers. The most common advice given by attorneys to persons under arrest is to make no statements, but to leave the defense to counsel. Whether or not an arrested man has yet had the opportunity to consult a lawyer, he may well conclude that his best interests will be served by silence.

In *People* v. *Simmons*, 28 Cal.2d 699 [172 P.2d 18], defendant attempted an explanation that his car, which had been

used in a robbery, had been stolen from him. The officers then gave defendant two written statements of other persons directly accusing defendant of participation in the robbery and murder. When the police asked defendant if he admitted or denied it, he responded: "I told you all I am going to tell you. I have nothing more to say." The Supreme Court said (p. 721): "This, while not a denial of the contents of the statements, was certainly not an admission of their truth, and it did not lay a foundation for the introduction of such hearsay evidence under the rule herein announced. In other words, it is obvious that defendant was attempting to exercise his constitutional privilege against self-incrimination, despite the insistence of the officers upon carrying on a conversation about the contents of the statements, and that his responses were not such as could give rise to an inference of acquiescence or of guilty consciousness. In this situation it was an abuse of discretion on the part of the trial court to admit the evidence in the first instance; the circumstances were such as to foreclose it."

■ The nature of the rule requires that each case be examined on its own facts to determine whether the circumstances were such that the silence of the accused may imply consciousness of guilt, or whether it appears that the defendant was simply exercising his undoubted right to follow "the policy of silence." Other examples of cases falling in the latter category are *People* v. *Parks,* 151 Cal.App.2d 537 [311 P.2d 847], *People* v. *Reingold,* 87 Cal.App.2d 382, 412-414, [197 P.2d 175], and *People* v. *Spencer,* 78 Cal.App.2d 652 [178 P.2d 520].

■ In the present case, when the officer asked defendant for "his story," defendant said he "didn't know anything about it." This constituted a complete answer. Until defendant was ready to retract this statement, anything further he might say on the subject would be either repetitious or argumentative. The officer then confronted defendant with more accusatory matter and defendant "made no statement at all." This period of silence was described as "maybe about fifteen minutes or so." Then the questioner pressed defendant for "the truth" and defendant responded, "I have nothing to say. I don't want to talk about it."

Here is a defendant who first said he didn't know anything about the burglary, then sat silently for 15 minutes while the officers pressed him to comment on the statements made by others, and then told the officers he did not want to

talk about it. No inference of guilt should be drawn from the fact that defendant did not choose to repeat his denial at frequent intervals during the 15 minutes the others spent trying to persuade him to tell what they considered to be "the truth." (Cf. *People* v. *Reingold,* 87 Cal.App.2d 382, 412-414 [197 P.2d 175].)

 The final statement by the officer was, "Well, I see you're back in trouble. When are you going to straighten out?" If this be deemed accusatory, it is not an accusation of burglary. The officer's comment was demonstrably true: Defendant was in trouble, whether guilty or innocent of the offense charged. His acknowledgment of this statement—if his answer be so interpreted—has no evidentiary value in this case.

Let a peremptory writ issue.

Shinn, P. J., and Ford, J., concurred.