[Crim. No. 10380.   Second Dist., Div. Four.   Dec. 21, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. SALVADOR
CORONA, Defendant and Appellant.

Cary G. Branch, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Calvin W. Torrance, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—Appellant, James Bradley and Richard Smoot were charged by information with possession of heroin in violation of Health and Safety Code section 11500. The superior court appointed separate counsel for each of the three. Each pleaded not guilty and waived a trial by jury. After a court trial, appellant and Bradley were found guilty as charged and Smoot was found not guilty. Corona alone is here appealing from the judgment.

### Facts

In stating the case we assume in favor of the judgment the existence of every fact which the trial judge could have

deduced from the evidence. (*People* v. *Hills*, 30 Cal.2d 694, 700 [185 P.2d 11].)

Officer Miller, a deputy sheriff assigned to the narcotics detail, was looking for defendant Bradley, who was suspected of having robbed a drugstore. Miller had also been investigating appellant, and knew that appellant lived in the Longfellow Hotel and that Bradley had visited there on many occasions. Shortly after midnight on January 31, 1964, Miller saw Bradley's automobile in the parking lot back of the hotel. Officer Miller and Sergeant Jones went to the hotel office, where they learned that appellant was registered in room 319. They then proceeded to the hallway outside the room, stationed themselves on either side of the door, knocked on the door several times and called "Sal." There was no response from room 319. After a minute or two the door to room 333, immediately to the right of Officer Miller, opened and appellant put his head out. Sergeant Jones said " 'Hi, Sal.' " Appellant ran out of the room and down the hall, pushing Jones out of the way as he did so. From his position in the hallway Officer Miller was able to see that in room 333 there was a mirror on the bed with a small amount of "white-tannish" powder, several white paper bindles and a stack of creased white papers about 2 inches square. These papers were the kind in which half grams of heroin are bindled. This display was only 5 or 6 feet from where Officer Miller was standing. He immediately formed the opinion that this was heroin being packaged into bindles. Miller entered and arrested Bradley and Smoot who were in the room. In Smoot's jacket, which was hanging in the closet, were two needles, an eyedropper, a blackened spoon and a rag, all of which appeared to be paraphernalia for injecting heroin. While Miller was arresting the men in the room Sergeant Jones apprehended appellant in the hallway. Officer Miller was of the opinion that all three men were under the influence of narcotics at the time of arrest.

Immediately following the arrests Officer Miller showed appellant the mirror with the bindles, the open paper and the white powder, and appellant denied any connection with those items.

Officer Miller and Sergeant Jones then proceeded with the three arrestees to the Firestone station. There Officer Miller conducted an interview with appellant in the early morning hours of January 31, 1964. Appellant told Officer Miller that

Sergeant Jones and he had an agreement that he wouldn't discuss narcotics, and that he realized the officer had certain questions he would have to ask anyway. In the interview which followed, each time Officer Miller would bring up the subject of narcotics appellant would state, " 'Here we go again.' " The officer would then cease discussing narcotics. This occurred approximately six to ten times.

During the interview Officer Miller inspected appellant's arms and found old scar tissue on the inner arms indicative of past usage of narcotics.

Then the officer observed six fresh puncture wounds over the jugular vein on the right side of the neck, which indicated the recent injection of narcotics. The officer said, "I found where you shoot. Do you want to talk about it?" Appellant answered, " 'Do you want me to bull shit you or would you rather I didn't say anything?' " The officer replied that he would rather appellant say nothing.

Officer Miller then walked appellant to the briefing room, which was very well lighted. The officer formed an opinion, after a short examination of appellant's eyes, that the appellant was still under the influence of narcotics. The officer said, "You are straight now, Sal," and the appellant did not answer. In narcotics talk the word "straight" means being under the influence of narcotics.

Appellant testified that he had been living in room 319 of the Longfellow Hotel, and that about 12:15 a.m. on January 31 Bradley had come to room 319 and invited appellant to visit room 333. Until that time he had not known who lived in 333, though he had known Bradley for six or seven years. Appellant testified that he stayed in room 333 for about 10 minutes and saw no narcotics or paraphernalia, then left to go to the community bathroom down the hall, and 10 minutes later returned to room 333. Upon entering the room the second time he saw the mirror, white powder and papers on the bed. This time he remained in the room "between three and five minutes," according to his own testimony, and then walked out and was arrested.

He testified that he had nothing to do with the narcotics in the room, that the presence of the narcotics was the reason he left, that he was not under the influence, and that he had not used narcotics since "prior to going to prison." He denied that he had heard the officers knocking or calling to him while he was in room 333.

## Sufficiency of the Evidence

■ Appellant's first contention is that all of the evidence offered by the prosecution was admitted solely for probable cause and that no evidence of guilt was ever offered. The record fails to support that contention. The record shows that when objection was made to certain questions asked of Officer Miller relating to events occurring before he entered the Longfellow Hotel, the district attorney stated that the evidence was being offered ''for probable cause only.'' The record does not show that any other evidence was so limited.

■ Appellant's second contention is that the evidence was insufficient to support the trial court's finding that he was in possession of narcotics.

*People* v. *Hancock,* 156 Cal.App.2d 305 [319 P.2d 731], relied upon by appellant is distinguishable. In that case Crayton was a visitor in Hancock's room when a package of heroin was thrown from the window. The conviction of Hancock, who was on a bed 12 to 14 inches from the window was affirmed, and the conviction of Crayton was reversed. So far as the evidence showed, Hancock could have possessed the heroin without Crayton's knowing anything about it.

In the case at bench we have a man with a record as a narcotics user, found under the influence of narcotics, with two other men, also under the influence, in a small hotel room where heroin and packaging materials are spread out on top of the bed. The display on the bed could only mean that someone was then and there engaged in dividing and packaging the bulk heroin. There are the added circumstances that appellant claimed not to have heard the officers knocking on his door, and he attempted to flee when he came out. These circumstances, considered together, support a reasonable inference that appellant was one of those in possession. (Cf. *People* v. *Hamilton,* 203 Cal.App.2d 68 [21 Cal.Rptr. 393]; *People* v. *Cuevas,* 131 Cal.App.2d 393 [280 P.2d 831].)

## The Escobedo-Dorado Problem

■ Appellant also contends that the testimony concerning his interview with Officer Miller at the police station should have been excluded because of the rule of *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. The case was tried before either *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], or the *Dorado* case had come down, and there is no showing that appellant had been advised of his right to counsel and to silence, or that he had

waived these rights. From what does appear in the record we must assume that his statements were made under circumstances now rendering them inadmissible in evidence. (*People* v. *Luker*, 63 Cal.2d 464, 473 [47 Cal.Rptr. 209, 407 P.2d 9].)

At the beginning of the interview at the police station appellant told Officer Miller he did not want to discuss narcotics at all. Nevertheless during the interview the officer brought up the subject of narcotics six to ten times, and on each such occasion appellant responded, " 'Here we go again.' " The prosecution apparently offered this as incriminatory silence in the face of an accusation. But no inference adverse to appellant could be drawn from his refusal to discuss narcotics at that time. ██ An accused person is under no duty to discuss the case with the police, and where he remains silent under a claim of right, to which he is entitled, no adverse inference may be drawn. (*Martinez* v. *Superior Court*, 224 Cal.App.2d 755 [37 Cal.Rptr. 115].) The trial judge recognized this. In summarizing the evidence at the close of the case the judge commented that no inference could be drawn from appellant's refusal to discuss narcotics with Officer Miller.

██ After the officer discovered the fresh puncture marks on appellant's neck the conversation took a new turn. Appellant's response then " '. . . or would you rather I didn't say anything?' " may be construed as indicating some consciousness of guilt. But, as the trial judge pointed out, the reference was to appellant's guilt as a user of narcotics and not guilt of possessing the heroin displayed on the bed.

The issue as to whether appellant was or was not a current user of narcotics turned upon the testimony of the officer as against the testimony of appellant. Officer Miller, on the basis of his training and experience in narcotics' detection, and his observation of appellant, expressed the opinion that appellant was under the influence. Officer Miller pointed out that appellant's pupils did not react to light, and that he had several fresh puncture marks on his neck. Appellant testified that he had not used heroin for several years. The officer was not likely to have been mistaken as to what he saw. Unless he was fabricating, his conclusion was correct. If the trial judge believed that appellant was a current user, it was because the judge believed the officer's testimony. The form of appel-

lant's reply to the officer's accusation was of little significance, even on the question of whether appellant was a user.

We conclude that the testimony of Officer Miller relating to his conversations with appellant did not affect the decision and could not have been prejudicial and hence does not require a reversal. (*In re Spencer*, 63 Cal.2d 400, 408 [46 Cal.Rptr. 753, 406 P.2d 33].)

### The Motion for a New Trial

■ Appellant further contends that the trial court erred in refusing to grant his motion for new trial on the ground of newly discovered evidence. In support of the motion, appellant's counsel declared that he had talked to both appellant and Bradley prior to the trial and that Bradley had claimed sole possession and ownership of the narcotics. A declaration by Bradley filed in support of the motion states that the narcotics belonged to him alone, that Corona prepared to leave Bradley's room as soon as he saw the narcotics on the bed, that Bradley wanted to testify to this at the trial, but that his counsel would not allow him to do so. Bradley further states that he would have so testified at the trial and will so testify in the future.

The statements filed in support of the motion disclose that the evidence was not newly discovered, for appellant and his counsel both knew before the trial what Bradley could testify to if called as a witness. Assuming these statements to be true, the real reason Bradley's testimony was unavailable was that he had exercised his privilege as a defendant. Penal Code section 1323.5 provides in part: "In the trial of or examination upon all indictments, complaints, and other proceedings before any court, magistrate, grand jury, or other tribunal, against persons accused or charged with the commission of crimes or offenses, the person accused or charged shall, at his own request, but not otherwise, be deemed a competent witness."

The record indicates that Bradley did not make any request to testify, and he did not testify. In remaining silent at the trial he was exercising a privilege guaranteed to him both by statute and by Constitution. (Cal. Const., art. I, § 13.) And in so doing, he necessarily deprived both the People and appellant of the benefit of his testimony at the trial.

The thrust of the argument in support of the motion for new trial is that Bradley wanted to waive his privilege and testify, but that he was improperly prevented from doing so by his own attorney. Each of the defendants was furnished separate counsel because of a possible conflict of interest among them. We must assume that Bradley's attorney acted in good faith for what appeared to be the client's best interest.

The record shows that when the case was called for trial Bradley told the court that he wanted to change his plea. He was told by the trial judge: ". . . you should adhere to the advice of your counsel, . . ." Bradley accepted the court's admonition in silence and the trial proceeded. If appellant's attorney had felt that Bradley's testimony was being suppressed improperly, and to appellant's disadvantage, he could and doubtless would have said something to the trial judge at that time or at sometime prior to the submission of the case. Under the circumstances we cannot say that appellant lacked a fair opportunity to present all of the evidence to which he was legally entitled.

### Refusal of Narcotics Commitment

Appellant's final contention is that the trial court erred in refusing to suspend the imposition of sentence and commence a civil proceeding which would lead to his confinement in a rehabilitation facility under Penal Code section 6451,[1] which then provided in part: "Upon conviction of a defendant for any crime in any superior court, if it appears to the judge that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics he shall adjourn the proceedings or suspend the imposition of the sentence and conduct proceedings to ascertain if such person is addicted to narcotics or in imminent danger thereof unless in the opinion of the judge the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment under this section."

Appellant was, at the time of sentence, on parole as a result of a prior narcotics conviction and sentence. The record shows that before pronouncing judgment the trial judge wrote a letter to the Director of Corrections to inquire whether the Adult Authority and the Narcotics Evaluation

---

[1] Reenacted 1965 as Welfare and Institutions Code section 3051.

Board would be agreeable to a commitment of appellant to the rehabilitation center.

The director replied: "This case has been reviewed by the Adult Authority, who does not wish to handle it on a dual commitment basis. Also, the Rehabilitation Center staff, as well as the supervising parole agent recommend against placement at CRC on the basis of reliable information (L.A. Sheriff's Office, Narcotic Detail), as to Mr. Corona's involvement in the narcotic traffic in the Huntington Park area. The possession of two loaded guns found in subject's room during the arrest is an additional factor of importance when considering placement at the Rehabilitation Center.

"In view of the above factors, the Department of Corrections recommends subject case be handled as a routine parole violation and that disposition be made accordingly."

The trial court then sentenced appellant to state prison.

The statute authorizes the trial judge to consider whether the defendant's record indicates a pattern of criminality that makes him unfit for the program. One aspect of appellant's pattern of criminality was that he had been convicted and sentenced to state prison, had been paroled and had violated his parole, and would be required to serve further time in prison under the prior sentence. The judge recognized that if the Adult Authority had been willing to allow appellant to serve the prison time owed in the narcotics rehabilitation center, i.e.—a "dual commitment"—then a rehabilitation commitment might be a practicable disposition of the present case. But the Adult Authority was unwilling to remit the prison term in this way, and the judge was powerless to cancel or modify the prison sentence imposed in the earlier case. A narcotics commitment in this case would present a serious problem: If the narcotics commitment were to be served first, appellant would undergo treatment with the knowledge that he had a prison term (on the parole violation) awaiting him when he was released from the rehabilitation center. If the prison sentence were to be served first, his entry into the rehabilitation center might be postponed for several years. In the light of these circumstances, which were brought about by appellant's prior criminality, the judge could reasonably conclude, in the exercise of his discretion, that appellant was not a fit subject for the rehabilitation center. (Cf. *People* v. *Zapata,* 220 Cal.App.2d 903, 913 [34 Cal.Rptr. 171].)

■ In his reply brief counsel for appellant argues that it was improper for the judge to write a letter to the Director of Corrections before he ruled. This is not what appellant's attorney told the trial court. Before writing to the Department of Corrections the judge stated in open court what he proposed to do and appellant's attorney replied ''That is agreeable.'' It was then the hope of the appellant (and perhaps of the trial judge) that the Adult Authority would express willingness to give appellant credit on his prison time owing for his time in the rehabilitation center. Had the judge received such assurance he might well have exercised his discretion differently. When the reply was received, that too was placed in the record.

What the trial judge did was to adopt a perfectly sensible means of obtaining information which he needed in order to exercise his discretion wisely. Appellant agreed for equally sound and sensible reasons. Appellant has no just cause to criticize that procedure now.

We do not overlook the opinion in *People* v. *Pate,* 234 Cal.App.2d 273 [44 Cal.Rptr. 462], in which the appellate court held that the superior court had the duty of exercising its own discretion in dealing with a defendant whose commitment to the rehabilitation center had been rejected by the director. In the present case the record clearly indicates that the trial court did consider all of the circumstances and did exercise its own discretion in deciding what to do.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 16, 1966.